nathanielpunzalanrule29

LEONARDO M. RAPADAS
United States Attorney
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
Telephone: (671) 472-7332
Fax: (671) 472-7334

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 07-00075 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **GOVERNMENT'S RESPONSE** |
| | ) | **TO DEFENDANT'S RULE 29** |
| | ) | **MOTION** |
| NATHANIEL DIAZ PUNZALAN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The United States of America, by and through its undersigned counsel, submits the

following response to defendant's Rule 29 motion pursuant to the Rules of Criminal Procedure.

Fed.R.Crim. Pro. Rule 29 states as follows**:**

Rule 29. **Motion for Judgment of Acquittal**.

(A) Before submission to the Jury. After the government closes its evidence or after the
close of all the evidence, the court on the defendant's motion must enter a judgment of
acquittal of any offense for which the evidence is insufficient to sustain a conviction.
The court may on its own consider whether the evidence is insufficient to sustain a
conviction. If the court denies a motion for a judgment of acquittal at the close of the
government's evidence, the defendant may offer evidence without having reserved the
right to do so.

(B) Reserving Decision. The court may reserve decision on the motion, proceed with
the trial (where the motion is made before the close of all the evidence), submit the case
to the jury, and decide the motion either before the jury returns a verdict or after it returns
a verdict of guilty or is discharged without having returned a verdict. If the court
reserves decision, it must decide the motion on the basis of the evidence at the time the
ruling as reserved.

-1-

( C) After Jury Verdict or Discharge.

(1) time for a Motion.  A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later.

(2) Ruling on the Motion.  If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal.  If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

(3) No Prior Motion Required.  A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

The relevant inquiry in a Rule 29 motion for acquittal "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)(emphasis in original).   The question to ask is not whether the evidence excludes every hypothesis except guilt, but whether the trier of fact could reasonably arrive at its own conclusion.  U.S. v. Eaglin, 571 F.2d 1069, 1076 (9th Cir. 1977) *cert. denied*, 435 U.S. 906.  All reasonable inferences from the evidence must be drawn in favor of the government.  U.S. v. Jabara, 618 F.2d 1319, 1328 (9th Cir.), *cert denied*, 446 U.S. 987.   Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.  United States v. Talbert, 710 F.2d 528, 530 (9th Cir. 1983)(per curiam), *cert. denied*, 464 U.S. 1052, 104 S. Ct. 733, 79 L.Ed.2d 192 (1984);  United States v. Thomas, 453 F.2d 141, 143 (9th Cir. 1971)(per curiam), *cert. denied*, 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972).

"The applicable definition of a 'firearm' is set forth by 18 U.S.C. §921(a)(3) which provides in part:

(A)  any weapon (including a starter gun) which will or is designed to or may readily be

converted to expel a projectile by the action of an explosive;

(B)  the frame or receiver of any such weapon;

( C) any firearm muffler or firearm silencer; or

-2-

1      (D)  any destructive device.

2      Such term does not include an antique firearm.

3      The definition is set forth in the disjunctive and therefore any device meeting any of the

4 definitions qualifies as a firearm (if it is not an antique)." U.S. v. Romero-Martinez, 443 F.3d

5 1185 (9th Cir. 2006). "The statute imposes no requirement that the gun be loaded or operable."

6 United States v. Gonzalez, 800 F.2d 895, 899 (9th Cir. 1986). "In fact, the term "firearm"

7 includes mere parts of a gun which alone are incapable of firing, such as the frame, receiver,

8 muffler or silencer - clearly indicating Congress did not consider operability as an essential

9 statutory element." U.S. v. Hunter, 102 F.3d 82, 86 (9th Cir. 1996).

10      The Government has presented sufficient evidence to survive a Rule 29 Motion for

11 Acquittal.

12      In U.S. v. Liles, 432 F.2d 18 (9th Cir. 1970), defendant Liles, a felon with a prior felony

13 conviction, argued that the government failed to prove that the object he possessed was a

14 "firearm" within the meaning of 18 U.S.C. §1202(c)(3) which defined a firearm as a weapon

15 'which will or is designed to or may readily be converted to expel a projectile by the action of an

16 explosive.' Defendant Liles argued "that the Government failed to prove that the object he

17 possessed could actually have been fired. The gun itself was not produced. None of the

18 prosecution witnesses had attempted to discharge the weapon, and appellant argues that the

19 remaining circumstantial evidence points with equal force toward the possibility that the object

20 was a toy or a BB pistol." Liles, 432 F.2d 18, 20 (1970). The Ninth Circuit held "The record

21 indicates, however, that the evidence presented was not as flimsy as appellant would have us

22 believe. The manager of the sporting goods section, a man who sold a wide variety of firearms,

23 identified the weapon as common variety of revolver. He further testified that he had held the

24 weapon briefly and that he had looked down the barrel and cylinder of the weapon with enough

25 care to see that it did not appear to be loaded. So close an inspection offered ample opportunity

26 for someone as familiar with firearms as was he to determine the nature of the object he was

27 observing. Moreover, there was testimony that appellant had asked to see revolver ammunition

28 for the weapon, although he did not purchase any. Finally, an acquaintance of Liles testified that

-3-

1 he had seen the weapon, that it was a revolver similar to two that he himself had owned, and that

2 appellant had identified it as a revolver of that kind.  The direct and circumstantial evidence

3 adequately sustained the Government's burden on this issue." Liles, 432 F.2d 20.

4 **18 U.S.C. 921(a)(3)(A)**

5 In this case, the Jury had before it sufficient facts to determine if the weapon is designed

6 to ... expel a projectile by the action of an explosive pursuant to 18 U.S.C. §921(a)(3)(A).

7 Superior Court Marshal Theodore Padua, a Marshal with eighteen years of experience

8 with the Superior Court of Guam testified that he saw a bag within "arms reach" of Punzalan.

9 He manipulated the bag, and felt the shape of a gun.  He testified that he believed there to be a

10 firearm inside the bag.  Marshal Padua opened the bag, unzipped the bag, and saw a firearm in

11 the bag.  He testified it was a pistol, and the pistol was black in color.  Marhsal Padua testified he

12 lifted the firearm up, showing it to Marshal Roland Okada.   He placed it back where he found it

13 for confiscation by the Guam Police Department.

14 Superior Court Marshal Roland Okada, a Marshal with seventeen years of experience

15 with the Superior Court Marshals testified that he also saw the firearm next to Punzalan.  The

16 bag containing the firearm was left on the floor until the arrival of Guam Police Officer Harilee

17 Matsumoto's arrival.  Marshal Roland Okada testified that he showed Harilee Matsumoto the

18 gun.  She testified she confiscated the Springfield Armory XD .45 caliber firearm from the floor

19 of the defendant's room.

20 Witness Dennis Larson testified that the Springfield Armory XD .45 caliber firearm was

21 his personal firearm.  He reported that the Springfield Armory XD .45 caliber is the actual

22 firearm and ammunition which was stolen from his residence in 2006.   Dennis Larson then

23 compared the serial number on the Springfield Armory XD .45 caliber firearm with the serial

24 number appearing on his firearms registration card.  Dennis Larson testified that he made the .45

25 caliber reloads himself, that the reloads he made are comprised of explosives (gunpowder), lead,

26 and a cartridge with primer (another explosive) .  Dennis Larson also testified that the magazine

27 for the Springfield Armory XD .45 caliber came as a set with a Springfield Armory XD firearm.

28 He also testified that the magazine bore the words Springfield Armory XD on the bottom, and

-4-

1 that the magazine which bore the words Springfield Armory XD holds thirteen rounds of .45

2 caliber ammunition. He testified that the Springfield Armory XD and the magazine were

3 purchased as a set. He also testified that the bullets were with the Springfield Armory XD .45

4 caliber firearm when they were stolen. Mr. Larson testified he used the reloaded .45 caliber

5 ammunition at a shooting range. He testified that he also used the Springfield Armory XD .45

6 caliber as a duty weapon for work with the Department of Revenue and Taxation. Mr. Larson

7 testified that after the theft of the Springfield Armory XD .45 caliber firearm and the .45 caliber

8 ammunition, made a report to Guam Police. He testified that he is glad that the weapon was

9 located, identified, and is off the street.

10       Marhsal Padua, Marshal Okada and Dennis Larson testified after viewing the firearm.

11 Each of the witnesses were able to determine the nature of the object he was observing. Each of

12 these witnesses have significant familiarity with firearms in general, and specifically with this

13 specific Springfield Armory XD .45 caliber firearm. This evidence presented at trial is

14 sufficient for the jury to find that the Springfield Armory XD .45 caliber is a firearm designed to

15 expel a projectile through the use of an explosive.

16       **18 U.S.C. 921(a)(3)(B)**

17       The evidence presented at trial is sufficient to prove the alternative definition of a firearm

18 or a frame or receiver under 18 U.S.C. §922(a)(3)(B).

19       Dennis Larson testified that the Springfield Armory XD .45 caliber firearm is registered

20 with the Guam Department of Revenue and Taxation. Mr. Larson testified that he purchased this

21 specific firearm from a Federal Firearms Licensee Mr. Jeff Nelson, the owner of "The Firing

22 Line." Dennis Larson testified that Jeff Nelson is a Federal Firearms Dealer who sells firearms

23 and ammunition. The Jury could make a reasonable inference based on the facts presented that a

24 firearm can only be sold by a Federal Firearms Licensee and that a firearm must be registered

25 with the local authorities. Since the Springfield Armory XD .45 caliber firearm was sold and

26 registered by a Federal Firearms Licensee, it is a "firearm" under the definition of title 18.

27       Additionally, Dennis Larson identified the Springfield Armory XD .45 caliber firearm by

28 referring to the exact serial number on his Firearms Identification Registration comparing it with

-5-

1   the actual serial number on the Springfield Armory XD firearm. Dennis Larson looked at the

2   lower end of the receiver to testify to the registration information, and this was performed in

3   court using the Springfield Armory XD .45 caliber firearm. Notably, Special Agent John

4   Quintanilla with Alcohol, Tobacco, Firearms and Explosives testified that the serial number for a

5   firearm is located on the receiver of the firearm.

6          The facts stipulated between the parties provide further support. The parties stipulated

7   that the Springfield Armory XD .45 caliber firearm traveled in interstate commerce.

8          Lastly, the Jury could and did make a factual finding whether the Springfield Armory XD

9   .45 caliber firearm is a firearm under 18 U.S.C. §921(a)(3)(A) or (B). The Springfield Armory

10  XD .45 caliber firearm was received into evidence for examination by the Jury. Before retiring

11  to deliberate, the Court instructed the Jury "The term 'firearm' means any weapon which will or

12  is designed to or may readily be converted to expel a projectile by the action of an explosive or

13  the frame or receiver of any such weapon." The Jury can, and did make a factual

14  determination that the Springfield Armory XD .45 caliber firearm is a firearm.

15         It is a well established rule that a verdict or finding may be based on reasonable

16  inferences fairly drawn from the facts in evidence. Viewing the evidence in a light favorable to

17  the Government, the evidence is sufficient to sustain a conviction.

18         Dated this 20th day of August, 2008.

19                                          LEONARDO M. RAPADAS
                                            United States Attorney
20                                          Districts of Guam and NMI

21

22                              By:    /s/ Rosetta L. San Nicolas
                                       ROSETTA L. SAN NICOLAS
23                                     Assistant U.S. Attorney

24

25

26

27

28

                                            -6-